IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BETTY J. PEYTON                                                                                          PLAINTIFF

vs.                                              CIVIL NO. 04-5173

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                                            DEFENDANT

**MEMORANDUM OPINION**

Betty Peyton ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on May 24, 2002, alleging an onset date of April 1, 2002, due to lower back problems, knee pain, and migraine headaches. (Tr. 15, 50-52, 75). An administrative hearing was held on February 6, 2003. (Tr. 679-704). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-three years old and possessed the equivalent of a high school education. (Tr. 16, 50). The record reflects that she has past relevant work experience ("PRW") as a nurse's aide, cook, and telemarketer. (Tr. 16, 84).

On April 9, 2003, the Administrative Law Judge (hereinafter "ALJ"), issued a written opinion finding that, although severe, plaintiff's degenerative disc disease , medial and lateral meniscus tear of the right knee, and post-surgical chondromalacia of the patella did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18, 23). Further, he

determined that plaintiff did not suffer from a medically determinable mental impairment, and that her migraine headaches constituted a non-severe impairment. (Tr. 17-18). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity (hereinafter "RFC"), to perform a wide range of light work, limited only by her ability to occasionally climb, balance, stoop, knee, crouch, and crawl. (Tr. 18, 20, 23). As such, he determined that plaintiff could perform her PRW as a telemarketer. (Tr. 23).

On June 25, 2004, the Appeals Council declined to review this decision, in spite of the fact that plaintiff attached a significant number of additional medical records to her request for review. (Tr. 4-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law:**

When, as in this case, the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. We then have no jurisdiction to review the Appeals Council's action because it is a non-final agency action. See *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the

ALJ's decision is still supported by substantial evidence. This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had they been available at the initial hearing. *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997). Thus, we have endeavored to perform this function with respect to the newly submitted evidence. *Id.*; *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995).

Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the additional medical evidence submitted by plaintiff to the Appeals Council. (Tr. 189-678). Contrary to the ALJ's opinion stating that the record revealed no evidence of disc herniation or stenosis to support plaintiff's allegations of severe back pain, on April 22, 2003, and May 8, 2003, one month after the ALJ rendered his decision, MRIs of plaintiff's cervical spine revealed a large right lateral disc protrusion at the C6-7 level that significantly flattened the ventral right lateral aspect of the thecal sac and underlying spinal cord, herniation in the right C6-7 neural foramen that almost certainly impinged upon the right C7 nerve root, moderate degenerative disc changes; moderate spinal canal stenosis at the C4-5 and C5-6 related to small posterior vertebral

4

body osteophytes, small broad-based bulges, posterior element bony hypertrophy, moderate-severe bilateral neural foraminal narrowing at these levels, and moderate degenerative changes; and, mild spinal canal stenosis at the C3-4 level related to small posterior vertebral body osteophytes, small broad-based disc bulges, posterior element bony hypertrophy, moderate-severe bilateral foraminal narrowing, and mild degenerative disc changes. (Tr. 22, 350-351, 362). In fact, plaintiff's condition was so severe that it required her to undergo an anterior cervical interbody fusion with instrumentation on the C5-6 and C6-7 levels with an iliac crest bone graft. (Tr. 239-240).

Additionally, an MRI of plaintiff's lumbar spine dated October 2, 2003, showed a small broad based disc bulge at the L4-5 that flattened the ventral aspect of the thecal sac, moderate bilateral neural foraminal narrowing, mild degenerative disc changes, and a small amount of discogenic sclerosis surrounding the anterior aspect of the T11-12 intervertebral disc space. (Tr. 632). Examination notes indicate that she was "very tender to palpation over the lumbar spine." (Tr. 633). She was also noted to have a "very poor range of motion" in her lumbar spine. Plaintiff's pain was so severe that her doctor prescribed Valium, Hydrocodone, and Ultracet to treat the pain. (Tr. 633). Other records also shine further light on plaintiff's knee condition, asthma, and migraine headaches. (Tr. 189-678).

Based upon our consideration of the evidence, we believe that there is a reasonable likelihood that this additional evidence would have changed the ALJ's opinion. Accordingly, on remand, the ALJ should consider this evidence in conjunction with the other medical evidence contained in the file, before making a final decision. In addition, the ALJ is directed to make specific findings concerning the affects plaintiff's prescription medications have on her ability to perform work-related activities. This is of particular significance in a case, such as this one, where the plaintiff has been prescribed

5

several narcotic pain medications. The ALJ is required to consider all the evidence relating to plaintiff's subjective complaints including evidence that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).

We also note that the record does not contain an RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

As there is no RFC assessment contained in the current record, we believe that remand is necessary to allow for further development of the record concerning plaintiff's RFC. We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally

constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Accordingly, on remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking them to review all of plaintiff's medical records and complete an RFC assessment regarding plaintiff's capabilities during the time period in question. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). The physicians should also be asked to provide the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this the <u>8th</u> day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE